WILLIAM D. KERFOOT *et al.*

*v.*

SARAH ANN BRECKENRIDGE.

1. SPECIFIC PERFORMANCE—*contract to take back property sold.* If a party, in selling real estate in a city, guarantees that a certain street will be extended and opened through the property within two years, and agrees, if such street is not opened within that time, on a reconveyance by the purchaser, to refund

the money paid for the same, with ten per cent interest, a court of equity will specifically enforce the contract against the vendor, on a tender of a proper deed to him.

2. CONTRACT—*guaranty of opening a street.* A written guaranty that a certain street shall be extended and opened through certain lands sold and conveyed, within two years, is not kept merely by the institution of proceedings to condemn the ground for the street, and the assessment of benefits, within such period. such proceedings being liable to be abandoned before the opening of the street.

3. CHANCERY JURISDICTION—*although there be a remedy at law.* A court of equity has jurisdiction to specifically enforce a contract by which the vendor of land agrees to take back the land conveyed and refund the purchase money, with interest, if a certain expected public improvement is not made within a given time, although the other. party may have a remedy at law to recover damages for a breach of the guaranty in respect to such improvement.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. JOHN BORDÉN, for the appellants.

Mr. HENRY WALLER, and Mr. D. W. JACKSON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decree of the circuit court of Cook county, sitting in chancery, in a cause therein pending and determined, in which Sarah Ann Breckenridge was complainant, and William D. and Charles A. Kerfoot, impleaded with Gwynn Garnett, were defendants, the object of which was, to compel the Kerfoots to perform specifically a certain contract they had entered into on the 21st day of May, 1873, with her, then bearing the name of Sarah Ann Garnett, which contract was, substantially, that on that day the Kerfoots had agreed to sell, and Mrs. Garnett had agreed to buy, lot 25, in block 124, in the School Section addition to the city of Chicago, the lot being on the east side of Fourth avenue, and extending back the same width to the alley in the rear, and to what is anticipated will be Dearborn street when extended, for ten

thousand dollars, in cash, and the assumption by Mrs. Gar-
nett of an incumbrance on the premises of five thousand dol-
lars, with interest thereon at the rate of nine per cent per
annum, from the date of the contract, and all taxes and assess-
ments for the year 1873.   The contract concludes thus:   "It
being further understood and agreed between said parties that
the party of the first part guarantee to the said Sarah Ann
Garnett that the beforementioned Dearborn street will be
continued and extended through the beforementioned prop-
erty within a period of two years from the day of the sale
and conveyance of the same to her, the said Sarah Ann; and
in case the said Dearborn street be not continued and extended
through the said property within said time, they will refund
to the said Sarah Ann the said sum of ten thousand dollars
so as aforesaid agreed to be paid by her, together with interest
thereon at ten per cent per annum, from the time of such
payment, on her executing a good and sufficient warranty deed
conveying the said property, with a perfect title thereto, to
the said W. D. and C. A. Kerfoot, their heirs or assigns."

On May 22, the day following this contract, Sarah Ann
Garnett, by deed of that date, entered into an ante-nuptial
contract, reciting therein that a marriage was about to take
place between her and William L. Breckenridge.   To this
deed Breckenridge and Gwynn Garnett were also parties,
whereby, in anticipation of the marriage of Mrs. Garnett to
Mr. Breckenridge, all the property, real and personal, and
mixed, of Mrs. Garnett, was conveyed to Gwynn Garnett, in
trust for her.   On the same day, the parties were married.
The ten thousand dollars is admitted by the defendants, the
Kerfoots, to have been paid, and they, on June 7, 1873, con-
veyed the lot to Gwynn Garnett, in fulfillment of the contract,
in trust for complainant.

The Kerfoots answered the bill, admitting the material facts
charged therein as to the contract, the marriage of complain-
ant, the ante-nuptial contract, and the deed to Gwynn Garnett,
as trustee; but deny that Dearborn street had not been opened

and extended within the time and in the manner mentioned in the contract, and deny that the contract of guaranty had become operative, and deny the right of complainant to demand of them a compliance therewith, or to require them to accept a reconveyance of the lot and pay her the sum of ten thousand dollars and interest; deny that she elected to avail of the provisions of the contract respecting a reconveyance, and that she made a tender thereof, alleging that, after her marriage, and deed to Gwynn Garnett upon the trusts contained in the same, she has been unable to elect, and also unable to convey a good title, and various other matters, which will be noticed as we proceed. There was also a prayer for general relief.

There was an issue made up, and the case heard by the court on the pleadings and evidence, in which it appeared that Dearborn street was not extended and opened, but that proceedings had been commenced by the city, which had gone so far as to estimate the damage by taking the ground for the street, and assessing the benefits to the lot at six thousand three hundred and ninety-one dollars and ninety-eight cents; and it also appeared that proper conveyances were tendered by complainant and her trustee, Garnett, to the Kerfoots, for the lot.

The court decreed as prayed, and the Kerfoots appeal, assigning several errors, all of which we have carefully considered, and find none of them well assigned. We think it a case in which justice, equity and honesty is clearly on the side of appellee. Here is a plain case: A party sells a lot of ground for a large sum of money, anticipating that an important street is to be extended and opened through it, whereby its value will be greatly enhanced, and expressly guarantee, if the street is not extended and opened within two years, they will pay back the money received, and interest at ten per cent per annum, and the purchaser shall reconvey the lot by a proper warranty deed. If a good and sufficient warranty deed is tendered to the seller, has not a case arisen in which the other party can call upon a court of equity to enforce the

contract specifically? We are at a loss to perceive what element is wanting to make it a perfect case.

The express undertaking of appellants was, that the street should be opened within two years. It is contended by appellants that the street is opened by force of the condemnation proceedings and assessment of benefits. This position is not tenable. The street is not opened, and the proceedings may never be consummated; they may be abandoned. In commenting upon the statute in this regard, this court held, in *City of Chicago* v. *Barbian,* 80 Ill. 482, that the judgment rendered in such cases is conditional, and is to be a sufficient judgment of condemnation only where payment shall be made of the amount of the finding, and that no right either to take or damage the property vests in the applicant for condemnation, until payment shall have been made. Until then, the owner is entitled to the absolute control and use of his property, and can not be deprived thereof until the order shall be made prescribed by section 15, on proof being made of payment as therein provided; and it was further held in that case that, if the condition of the order is not complied with in a reasonable time, by the payment of the damages and taking possession of the property, the proceedings will be regarded as abandoned, and a court of equity will enjoin any attempt to proceed under them.

These proceedings did not embarrass the appellee at all, or affect the title she obtained from the Kerfoots, who anticipated them when they sold the lot. The warranty of title by the deed of reconveyance was not affected by anything done in respect to extending the street, and appellants were bound to accept the deed, when tendered, and return the money they had received, with the stipulated interest.

Much is said by appellants about the trusts created by the deed to Gwynn Garnett, and it is contended the proof in regard to them makes a case different from the case stated in the bill. We do not think so. The proofs are undoubtedly more elaborate than the case demanded, but the case made by the

bill is sustained by the proof, and, under the general prayer, the decree was right, equitable and just.

It is insisted by appellants there was a complete remedy at law, and, therefore, chancery could not entertain jurisdiction. This objection is fully answered when the nature of the contract is considered—its object and purpose. The plain and obvious intention of the contract was, and it was the basis of the purchase, that Dearborn street should be extended and opened within two years from the date of the sale. Not only this guaranty was required, but the purchaser also stipulated, if that was not done, she should have the right to avoid the sale. She was not satisfied with a guaranty on a breach of which a jury might assess much or little damage if the street was not opened within the time, but she required an undertaking that, if the street was not opened, the sellers would take back the property. A court of law could not effect the last undertaking. There is no equity in appellants' claims and pretension.

The decree of the circuit court is right, and it must be affirmed.

*Decree affirmed.*